IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


REID HUMPHREY                                                                                    PLAINTIFF


V.                                             Civil No.13-cv-1029


SCOTT SNELL, in his individual
and official capacities; DARREN
MARTIN, in his individual and
official capacities; STEVE ADAMS,
in his individual and official capacities;
RICKY ROBERTS; in his individual
and official capacities; BILLY WHITE,
in his individual and official capacities;
EL DORADO POLICE DEPARTMENT;
and CITY OF EL DORADO, ARKANSAS                                                 DEFENDANTS


**MEMORANDUM OPINION**

Before the Court is a Motion for Summary Judgment (ECF No. 21) filed on behalf of the Defendants El Dorado Police Department; the City of El Dorado; Billy White and Ricky Roberts in their individual and official capacities; and Steve Adams, Darren Martin, and Scott Snell in their official capacities. Additionally, before the Court is a Motion for Partial Summary Judgment (ECF No. 25) filed on behalf of Defendants Steve Adams, Darren Martin, and Scott Snell in their individual capacities. Plaintiff Reid Humphrey has responded. (ECF Nos. 40 & 43). Defendants have replied. (ECF No. 46). The Court finds the matter ripe for consideration.

BACKGROUND

This case arises out of a March 24, 2012 incident with the El Dorado Police Department ("EDPD").  On that date, an individual called EDPD to report an unconscious female in the driver's seat of a vehicle in the parking lot of the Econo Lodge in El Dorado, Arkansas.  Sergeant Darren Martin, Officer Scott Snell, and Corporal Steve Adams were dispatched to the scene. At the time of the incident, Sergeant Martin was the supervising officer.

When they arrived, Sergeant Martin, Officer Snell, and Corporal Adams made contact with the female and identified her as Felicia Talley ("Talley").  Reid Humphrey ("Humphrey"), Talley's boyfriend, then approached the officers.  The officers asked Humphrey to step away from the scene.  At their request, Humphrey stepped to the edge of the parking lot but continued to observe the officers with Talley.  Sergeant Martin then asked Humphrey to retrieve the keys to Talley's car.  Humphrey went inside the Econo Lodge to retrieve the keys.  He returned to the parking lot shortly thereafter and gave the keys to Sergeant Martin.  Humphrey then returned to the edge of the parking lot.

The officers arrested Talley and placed her in the patrol car.  After they secured Talley in the patrol car, Sergeant Martin approached Humphrey and again asked him to leave the scene. Humphrey then turned and started walking toward the Econo Lodge.  Sergeant Martin claims that, as Humphrey turned, he stated, "I don't know why it takes four f**king police officers." However, Humphrey denies making the statement.

Immediately after Humphrey turned, Sergeant Martin grabbed Humphrey and threw him against the patrol car.  Corporal Adams and Officer Snell joined Sergeant Martin and helped him pin Humphrey against the patrol car.  Sergeant Martin then punched and kneed Humphrey. Officer Snell then struck Humphrey six times.  After Snell administered the strikes, the officers

handcuffed Humphrey and arrested him for obstructing government operations, disorderly conduct, and refusal to submit to arrest. Unbeknownst to the officers, the Econo Lodge's surveillance camera recorded the incident. The recording has both visual and audio footage. However, the audio footage is of poor quality.

After they arrested Humphrey, the officers took him to EDPD and detained him overnight. The next morning he was released on bond. Humphrey did not file a complaint with EDPD regarding the incident.

On December 7, 2012, Union County tried Humphrey for the charges. The EDPD police chief, Ricky Roberts, was out of town on that date. Therefore, he sent Captain Kevin Holt to observe the trial in his place. At the trial, Sergeant Martin, Officer Snell, and Corporal Adams testified, and the surveillance recording was shown. At the conclusion of the evidence, Humphrey's attorney moved to dismiss the charges, and the judge granted the motion.

After the trial, Captain Holt reported to Chief Roberts the details of the surveillance footage. Captain Holt advised Chief Roberts that an investigation into the matter was necessary. Upon Captain Holt's recommendation, Chief Roberts commenced an internal review of the March 24, 2012 incident.

On December 24, 2012, the EDPD Review Board reviewed the case. The Review Board concluded that Humphrey complied with all the officers' requests and did not resist arrest. The Review Board further concluded that the officers did not have probable cause to arrest Humphrey.

On January 7, 2013, the EDPD Bureau of Efficiency evaluated the Review Board's findings. It disagreed with the Review Board and determined that the officers had probable cause to arrest Humphrey. The Bureau of Efficiency also concluded that the officers used force

because Humphrey was resisting arrest and the force stopped once the officers had control over Humphrey. However, the Bureau of Efficiency concluded that Sergeant Martin, Officer Snell, and Corporal Adams failed to provide accurate, complete, and truthful documentation of the incident, and for the poor documentation, the Bureau of Efficiency suspended Sergeant Martin, Officer Snell, and Corporal Adams. Following the internal review, Chief Billy White replaced Chief Roberts as EDPD's police chief.

On March 22, 2013, Humphrey filed suit against the City of El Dorado and Chief Roberts, Chief White, Sergeant Martin, Officer Snell, and Corporal Adams in their individual and official capacities.[1] In his complaint, Humphrey alleges violations of the Federal Constitution and the Arkansas Constitution as well as state law torts.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cty. of LeSueur*, 47 F.3d 953 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt.*

---

[1] Humphrey originally brought suit against EDPD. However, in his response, Humphrey concedes that EDPD should be dismissed because it is not a legal entity subject to suit. Accordingly, Humphrey's claims against EDPD are hereby **DISMISSED**.

4

*Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## DISCUSSION

### 1. Claims against the City of El Dorado and Official Capacity Claims

An official capacity claim is a claim against the entity. *Monell v. N.Y., City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Thus, the Court will treat Humphrey's claims against Sergeant Martin, Officer Snell, Corporal Adams, Chief Roberts, and Chief White in their official capacities as a claim against the City of El Dorado ("the City Defendants"). Humphrey alleges the following claims against the City Defendants: (1) § 1983

claims for violations of his First and Fourth Amendment rights;[2] (2) an Arkansas Civil Rights Act ("ACRA") claim; (3) a battery claim; and (5) an outrage claim.[3]

### A. Section 1983 Claims and ACRA Claim

Claims under ACRA are analyzed in the same manner as § 1983 claims. *Sylvester v. Fogley*, 383 F. Supp. 2d 1135, 1139 (W.D. Ark. 2005). Thus, the Court will analyze Humphrey's ACRA claim and his § 1983 claim together.

Section 1983 liability for a constitutional violation may attach to a municipality if the plaintiff can show that the alleged violation resulted from: (1) an official municipal policy; (2) an unofficial custom; or (3) a deliberately indifferent failure to train or supervise. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1215 (8th Cir. 2013) (internal citations omitted). In this case, Humphrey asserts that municipal liability attaches because the City Defendants have an unofficial custom of encouraging the use of excessive force and arrests without probable cause.[4] Humphrey asserts that this custom is evidenced by the fact that Sergeant Martin, the supervisory officer, initiated the alleged excessive force and Chief Roberts did not investigate the incident for four months. The City Defendants assert that Humphrey misunderstands the standard for demonstrating a custom. Specifically, the City Defendants argue that Humphrey must establish a history of misconduct, not just misconduct in the case at bar.

---

[2]Humphrey additionally asserted violations of his Eighth and Fourteenth Amendment rights for the March 24, 2012 arrest. However, "[w]here as here, the excessive force claim arises in the context of an arrest . . . of a free citizen, it is most properly characterized as one invoking protections of the Fourth Amendment." *Graham v. Conner*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

[3]In his complaint, Humphrey also alleges a negligence claim against the City Defendants. However, in his response, Humphrey concedes that the City of El Dorado is immune from the tort of negligence. Accordingly, as to the negligence claim, the City Defendants' Motion for Summary Judgment is hereby **GRANTED**.

[4]Within his unofficial custom arguments, Humphrey also appears to assert that the City Defendants failed to adequately train. To establish a constitutional violation resulting from a deliberately indifferent failure to train, "the plaintiff must demonstrate that the [city] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Parrish v. Ball*, 594 F.3d 993, 998 (8th Cir. 2010) (internal quotations omitted). In this case, Humphrey asserts that the City Defendants failed to train officers but offers no evidence that the City Defendants had notice that their training procedures were likely to result in a violation of constitution rights. Accordingly, Humphrey has not established that his alleged constitutional violations resulted from a failure to train.

The Court agrees with the City Defendants. To establish a custom, the plaintiff must prove that the municipality engaged in a continuing pattern of unconstitutional misconduct. *Marksmeir v. Davie*, 622 F.3d 896, 902 (8th Cir. 2012). Liability for an unconstitutional custom or usage cannot arise from a single act. *McGautha v. Jackson Cnty.*, 36 F.3d 53, 56-57 (8th Cir. 1994). In this case, Humphrey attempts to prove custom by arguing the facts of this specific incident. However, he points to no other incident or claim that shows that the City Defendants maintained a custom of violating constitutional rights. Therefore, the Court concludes that Humphrey has not established that his alleged constitutional violations resulted from an unofficial custom. Accordingly, his ACRA and § 1983 claims against the City Defendants fail.

### B. Battery and Outrage Claims

Humphrey alleges a battery claim and an outrage claim against the City Defendants for the alleged misconduct of Sergeant Martin, Officer Snell, and Corporal Adams. The City Defendants assert that they are immune from liability for intentional torts pursuant to Ark. Code Ann. § 21-9-301. However, "[t]he Arkansas Supreme Court has 'consistently held that § 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts.'" *Ulrich v. Thornton*, No. 10-4024, 2012 WL 1933078, at *4 (W.D. Ark. May 29, 2012) (quoting *City of Farmington v. Smith*, 366 Ark. 473, 478, 237 S.W.3d 1, 5 (2006)). Accordingly, the City Defendants are not immune from the torts of outrage and battery.

The City Defendants argue that even if they are not immune, they are not liable for battery and outrage because the doctrine of *respondeat superior* does not apply. Specifically, the City Defendants argue that it was not foreseeable that Sergeant Martin, Officer Snell, and Corporal Adams would use excessive force when arresting Humphrey. Humphrey argues that

7

the fact that the City Defendants distribute a regulations manual, which prohibits the use of excessive force, establishes that the torts of battery and outrage were foreseeable.

The Court disagrees with Humphrey. Under Arkansas law, liability under the doctrine of *respondeat superior* attaches when an employee commits a foreseeable act within the scope of his employment. *Costner v. Adams*, 82 Ark. App. 148, 154, 121 S.W.3d 164, 169 (2003). This Court has held that "[i]t is unforeseeable that an officer would use excessive force in effectuating an arrest unless his employer was on notice that the officer was prone to such tendencies." *Patton v. City of Camden, Ark.*, No. 03-CV-1169, 2006 WL 508092, at *5 (W.D. Ark. March 1, 2006). In this case, Humphrey has not offered any evidence that the City Defendants were on notice that Sergeant Martin, Officer Snell, and Corporal Adams were prone to use excessive force. Therefore, the City Defendants cannot be held liable under a *respondeat superior* theory for battery or outrage allegedly committed by Sergeant Martin, Officer Snell, and Corporal Adams.

<u>2. Claims against Chief Roberts and Chief White in Their Individual Capacities</u>

Humphrey asserts that Chief Roberts and Chief White are liable in their individual capacities for the alleged misconduct of Sergeant Martin, Officer Snell, and Corporal Adams. Specifically, Humphrey asserts they are liable under § 1983 for violations of his First and Fourth Amendment rights and ACRA for violations of his rights under the Arkansas Constitution.[5] Chief Roberts and Chief White assert that Humphrey's claims against them fail because Humphrey provides no evidence of how their supervision and training caused a deprivation of his constitutional rights.

---

[5]As stated, claims under ACRA are analyzed in the same manner as § 1983 claims. *Sylvester v. Fogley*, 383 F. Supp. 2d 1135, 1139 (W.D. Ark. 2005). Thus, the Court will analyze Humphrey's ACRA claim and his § 1983 claims together.

A supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation or if his failure to train or supervise the offending actor caused the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010) (internal citations omitted). The parties do not dispute that neither Chief Roberts nor Chief White participated in the alleged constitutional violations. Thus, Chief Roberts and Chief White can only be liable if their failure to train or supervise Sergeant Martin, Officer Snell, and Corporal Adams caused the alleged deprivation.

To demonstrate a failure to supervise, the plaintiff must show that the supervisory officer: (1) received notice of a pattern of unconstitutional acts committed by subordinates; (2) demonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) failed to take sufficient remedial action; and (4) that such failure proximately caused injury to the plaintiff. *Id.* Similarly, to demonstrate a failure to train, "'the plaintiff must demonstrate that the [supervisory officer] had notice that [his training] procedures were inadequate and likely to result in a violation of constitutional rights.'" *Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). In this case, Humphrey asserts that Chief White and Chief Roberts inadequately trained and supervised their subordinates. However, he does not offer evidence that they received notice of unconstitutional acts committed by a subordinate or notice that their training procedures were likely to result in a violation of constitution rights. Accordingly, Humphrey's § 1983 and ARCA claims against Chief White and Roberts in their individual capacities fail.

<u>3. Claims against Sergeant Martin, Officer Snell, and Corporal Adams in Their Individual Capacities</u>

Humphrey asserts Sergeant Martin, Officer Snell, and Corporal Adams are liable in their individual capacities under § 1983 for violations of his First and Fourth Amendment rights and

9

ACRA for violations of his Arkansas Constitutional rights. Additionally, Humphrey asserts they are liable for the torts of battery, outrage, and negligence. Sergeant Martin, Officer Snell, and Corporal Adams did not move to dismiss the § 1983 claim for violation of Humphrey's Fourth Amendment rights, the ACRA claim, the battery claim, or the negligence claim in their Motion for Partial Summary Judgment. Accordingly, those claims will proceed to trial. However, they did move to dismiss Humphrey's § 1983 claims for violations of his First Amendment Rights and his outrage claim. Accordingly, the Court will address their arguments on those claims.

### A. Section 1983 Claim for Violations of First Amendment Rights

Humphrey asserts that Sergeant Martin, Officer Snell, and Corporal Adams violated his First Amendment rights when they arrested him. Sergeant Martin, Officer Snell, and Corporal Adams respond that they are entitled to qualified immunity.

Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Hope v. Pelzer*, 536 U.S. 730, 752 (2002); *Harlow v. Fitzgerald*, 457 U.S 800, 818 (1982); *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006). A qualified immunity analysis involves a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 223, 121 S. Ct. 215, 150 L. Ed. 2d 272 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 242, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (holding that courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first). The Court will first address whether the facts shown by Humphrey establish a violation of his First Amendment rights.

To prevail on a First Amendment retaliation claim, the plaintiff must show that: (1) he engaged in a constitutionally protected activity; (2) the defendants' action caused an injury to the plaintiff that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the adverse action was motivated in part by the plaintiff's exercise of his constitutional rights. *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014). In this case, Humphrey fails to show that he engaged in a constitutionally protected activity. His complaint is devoid of any statement he made to Sergeant Martin, Officer Snell, or Corporal Adams. Humphrey alludes to a conversation between himself and Sergeant Martin just prior to the arrest. However, he does not offer any evidence of the actual statements, and the Court could not glean any statements from the surveillance footage. The Court notes that Sergeant Martin claims that Humphrey stated: "I don't know why it takes four f**king police officers." However, Humphrey denies making the statement. Accordingly, because he offers no evidence that he engaged in a constitutionally protected activity, Humphrey has not established a violation of his First Amendment rights. Thus, Sergeant Martin, Officer Snell, and Corporal Adams are entitled to qualified immunity for that claim.

### B. Outrage Claim

Humphrey asserts that Sergeant Martin, Officer Snell, and Corporal Adams committed the tort of outrage when they arrested him without probable cause and beat him. Sergeant Martin, Officer Snell, and Corporal Adams argue that Humphrey's outrage claim fails because he has not presented evidence that he suffered severe emotional distress.

In Arkansas, the tort of outrage has four elements: "(1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of

decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it." *Kiersey v. Jeffrey*, 369 Ark. 220, 222, 253 S.W.3d 438, 441 (2007) (internal quotations omitted).  Arkansas has a narrow view of the tort of outrage and requires "clear-cut proof to establish" the elements. *Id.*  "Merely describing the conduct as outrageous does not make it so." *Id.*

In this case, the Court concludes that Humphrey has failed to establish a claim for outrage because he has not alleged that the emotional distress he suffered was so severe that no reasonable person could be expected to endure it.  Humphrey states that after the incident, he has not sought counseling, and he admits the only emotional repercussion is his inability to trust.  The Court concludes that this emotional damage does not rise to a level sufficient to support a claim for outrage.

## CONCLUSION

For the reasons stated above, the Court finds that the Motion for Summary Judgment (ECF No. 21) filed on behalf of the Defendants the City of El Dorado; Billy White and Ricky Roberts in their individual and official capacities; and Steve Adams, Darren Martin, and Scott Snell in their official capacities should be and hereby is **GRANTED**. Accordingly, Plaintiff's claims against these Defendants are **DISMISSED WITH PREJUDICE**.

As to the Motion for Partial Summary Judgment (ECF No. 25) filed on behalf of Defendants Steve Adams, Darren Martin, and Scott Snell in the individual capacities, the Court finds that that the motion should be and hereby is **GRANTED**.  Accordingly, Plaintiff's § 1983 claim for violations of his First Amendment rights and outrage claim are **DISMISSED WITH PREJUDICE**.  Plaintiff's § 1983 claim for violations of his Fourth Amendment rights, ACRA

claim, battery claim, and negligence claim against Defendants Steve Adams, Darren Martin, and Scott Snell in their individual capacities remain and will proceed to trial. An order of even date consistent with this Opinion shall issue.

**IT IS SO ORDERED**, this 22nd day of May, 2014.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge